## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **AMERICAN MEDICAL HOSPICE CARE, LLC, d/b/a AMERICAN MEDICAL HOSPICE & PALLIATIVE CARE,** | § § § § § | |
| **Plaintiff,** | § § | |
| **vs.** | § § | **CIVIL ACTION NO.  5:20-cv-00757** |
| **ALEX M. AZAR II, Secretary, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,** **Defendant.** | § § § § § § | |

## VERIFIED COMPLAINT FOR INJUNCTIVE
## AND DECLARATORY RELIEF AND ATTORNEY FEES

COMES NOW, American Medical Hospice Care, LLC, d/b/a American Medical Hospice & Palliative Care (the "Plaintiff" or "American Medical"), and files this its Verified Complaint for Injunctive and Declaratory Relief and Attorney Fees against Alex M. Azar II, Secretary of the United States Department of Health and Human Services (the "Defendant"), and alleges and avers as follows:

## INTRODUCTION

1.       American Medical is a Medicare hospice provider that delivers end-of-life care to patients in their homes in the greater San Antonio area.  Such care is critical, especially to terminally ill elderly patients who desire treatment that reduces pain and provides comfort, rather than seeking a cure for the terminal disease.  A Medicare beneficiary becomes eligible for hospice care upon a physician's certification that he or she has a terminal illness and is expected to live six months or less if the illness proceeds at its normal course.  The prognosis is based on the physician's clinical judgment regarding the normal course of the patient's illness.  When

electing hospice care, the patient must be informed of the palliative, rather than curative, nature

of the treatment.  Palliative care is defined as patient-and-family-centered care that optimizes

quality of life by anticipating, preventing, and treating suffering.  Palliative care addresses

physical, intellectual, emotional, social, and spiritual needs and facilitates patient autonomy,

access to information, and choice.  *See* 42 U.S.C. §§ 1814 (a)(7) and 1861(dd). A Medicare

beneficiary may elect to receive hospice care for up to two periods of 90 days each, followed by

an unlimited number of periods up to 60 days each.  A beneficiary electing to receive hospice

care must choose to receive it through a particular program.  The hospice must obtain written

certification of the beneficiary's terminal illness for each election period.  All hospice care must

be provided according to a written plan of care (POC), established by the hospice's medical

director in conjunction with the hospice's interdisciplinary staff, before hospice care begins.

Both the beneficiary's attending physician and the hospice's medical director and

interdisciplinary staff must periodically review the POC.  In effect, physicians determine whether

a patient is eligible for hospice services, and the provider furnishes services in accordance with

their plans of care.

   2. On December 2, 2019, Defendant noticed the imposition of a Medicare payment

suspension of Plaintiff's Medicare payments.  The suspension was brought under 42 C.F.R.

§ 405.371(a)(2) based upon a "credible allegation of fraud."  However, the list of sample claims

indicates that the basis for the payment suspension is that "Hospice services did not meet

Medicare requirements or services not supported in hospice record."  This garbled recitation

indicates inadequate documentation as the reason for the action.  As a result of the suspension

action, *all* Medicare payments owed to the provider are being withheld pending resolution of the

ongoing investigation.  A notice of continuation of the suspension was issued on May 20, 2020

to extend the suspension for an additional 180 days.

       3.      Unfortunately, the suspension action could not have come at a worse time.

President Donald Trump declared a national emergency over the COVID-19 outbreak on March

13, 2020.  Dr. Deborah Birx, White House Coronavirus Response Coordinator, has reported that

U.S. deaths cause by COVID-19 may be catastrophic.  She reported that Dr. Anthony Fauci,

National Institute of Allergies and Infectious Diseases, has predicted U.S. deaths could range

from 1.6 to 2.2 million in a worst-case scenario and projects 100,000 to 200,000 in a best-case

scenario.  The surge in confirmed coronavirus cases is overwhelming our nation's hospitals.

And it is having a cascading effect on ancillary providers and practitioners as well.[1]  This raises a

critical question: who will care for the seriously ill when hospitals have reached capacity?  Edo

Banach, president and CEO of the largest membership organization for hospice providers, the

National Hospice and Palliative Care Organization, says, "We all think there's a massive

workforce of nurses and social workers to provide care, but the reality is there isn't.  There's the

hospice workforce, and there's the home-health workforce, and that's who is around."  Banach

concludes, "This is really going to strain serious illness and hospice resources out in the

community." [2]  Suffice it to say, Medicare hospice providers will face tremendous challenges as

they attempt to treat an ever-growing patient base due to the recent spike in confirmed COVID-

19 cases in Texas.

---

[1] The Trump Administration has recently announced a wide array of temporary regulatory waivers and new rules to equip the American health care system, including home care providers, with maximum flexibility to respond to the COVID-19 pandemic.

[2] *Grace Birnstengel, How COVID-19 is Straining Hospice Care*, https://pbs.org/newshour/health/how-covid-19-is-straining-hospice-care, Apr. 13, 2020, at 2.

4.     Impact of the Medicare payment suspension threatens to force Plaintiff's closure and filing of bankruptcy. The provider derives approximately 90% of its revenues from treating sick and elderly Medicare patients. Obviously, if the provider is not paid for the hospice care it provides to patients, it cannot pay its employees, the care givers to these very needy patients.

5.     If Plaintiff is forced to close, Plaintiff's patients will have to obtain their end-of-life care elsewhere. Due to the COVID-19 outbreak, securing such services is an uncertainty. In fact, hospice providers in Texas are now in crisis due to the pandemic. Ms. Jan Spears, a healthcare consultant with extensive credentials, evaluated American Medical's present situation and opined that she was especially concerned that during the COVID-19 outbreak, the hospice's patients may be unable to receive terminal care from an over-burdened hospice industry in San Antonio, Texas.[3] She noted that home health and hospice providers are reluctant to accept transfers because the providers are finding it difficult to staff the patients they currently have on service. *Id.* For a hospice patient that has been on service greater than 180 days or one that has demonstrated slow decline, the burden is even more difficult to find a willing provider who will accept the transfer, even if the patient is willing to make the change. *Id.* Ms. Spears concluded that the government's Medicare payment suspension will force the provider's closure and jeopardize the health and safety of the hospice's current patients and their access to quality and compassionate end-of-life care. *Id.*

6.     Had Defendant acted properly, it would not have imposed the suspension. Federal regulations provide that CMS may find good cause exists *not* to suspend a provider's Medicare payments where it is determined that beneficiary access to items or services would be so jeopardized by a payment suspension, in whole or in part, as to cause a danger to life or

---

[3] Jan Spears, *MJS & Associates, LLC's Report on American Medical Hospice & Palliative Care* (June 24, 2020).

health. 42 C.F.R. § 405.371(b)(1)(ii). It is a clear abuse of discretion for CMS to not find that good cause exists here when the COVID-19 pandemic and the surge of confirmed coronavirus cases will soon overwhelm America's healthcare system, including hospices.[4] Not only will Plaintiff be forced to shut down, the government's suspension action places an even greater burden on a healthcare community that soon may be on the brink of collapse.[5]

7.     Notwithstanding the abuse of discretion, American Medical has a constitutional property interest in payments for services rendered and now *indefinitely* suspended during the investigation into the adequacy of its documentation. Defendant violates Due Process of Law by imposing the adverse action during the COVID-19 pandemic and national emergency when it fails to give notice and an opportunity for a hearing to contest the Medicare payment suspension. Indeed, the provider has no administrative appeal rights to contest the suspension. Clearly, there is a high risk that Plaintiff will be erroneously deprived of its property interest in earned Medicare payments withheld by suspension, pursuant to 42 C.F.R. § 405.371(a)(2), because the provider is not entitled to an administrative appeal to dispute and contest the adverse action, HHS has abused its discretion and not found good cause to not impose the adverse action, and there is absolutely no established timeframe for resolving the investigation of its documentation.

---

[4] Aside from the jeopardy to patients, the impact of the suspension is at odds with the coronavirus stimulus package. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security (CARES) Act was enacted, an economic relief package in response to the COVID-19 pandemic. The CARES Act provides economic support at the federal level to the business sector, employees, individuals and families, and specific industries that have been impacted, including air transportation, healthcare, and education. Key provisions providing for loan forgiveness require that workers need to remain employed.

[5] HHS's Office of Inspector General issued a message on minimizing burdens to provider on March 30, 2020. It stated that the OIG places a high priority on providing the health care community with the flexibility to provide needed care during this emergency. The delivery of patient care during this public health emergency must be the primary focus of the health care industry. For any conduct during this emergency that may be subject to OIG administrative enforcement, OIG will carefully consider the context and intent of the parties when assessing whether to proceed with any enforcement action. In view of the consequences, a review that is primarily focused on documentation that allegedly failed to support the complexity of claimed services does not warrant suspension of Medicare payments during the COVID-19 pandemic and national emergency.

8.      Moreover, patients at American Medical have a constitutional Due Process right (consistent with principles of equal protection) to access safe and reliable services under a federal Medicare program.  HHS violates the patients' right to access such healthcare by imposing the suspension during the COVID-19 pandemic and national emergency.  Due to the COVID-19 outbreak, securing such essential healthcare services is an uncertainty.  In fact, during the crisis, these patients may only be able to access essential healthcare through Plaintiff's hospice.  Clearly, good cause exists for Defendant not to suspend the provider's Medicare payments where, as here, the beneficiary's access to items or services are jeopardized and the risk of patient abandonment causes a danger to life or health.  *See* 42 C.F.R. § 405.371(b)(1)(ii).

9.      Plaintiff is entitled to injunctive relief that requires Defendant to temporarily rescind the Medicare payment suspension during the COVID-19 pandemic and national emergency, and release all suspended payments, until the national emergency is lifted or Defendant otherwise gives notice and an opportunity for a hearing on the adverse action in conformance with Due Process of Law.  Clearly, the government's ill-advised Medicare payment suspension during the COVID-19 pandemic and national emergency will irreparably harm Plaintiff by destroying its business and forcing its closure, and it jeopardizes the health and safety of the provider's patients and violates their Due Process right (consistent with principles of equal protection) to access essential healthcare services.  Moreover, the government's action will place an even greater burden on area providers and practitioners.  Defendant's egregious *ultra vires* conduct can only be remedied by an order for injunctive relief otherwise unavailable through the administrative process. Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to temporarily rescind the Medicare payment suspension during the COVID-19 pandemic and national emergency, as well as release all suspended payments, until the

emergency ends or Defendant can otherwise give notice and a hearing in conformance with Due Process of Law.[6]

## PARTIES

10.     American Medical Hospice Care, LLC, d/b/a American Medical Hospice & Palliative Care is a Texas limited liability company that has its principle place of business in Bexar County, Texas, and it provides home health services in the greater San Antonio area.

11.     Defendant, Alex M. Azar II, in his official capacity, is the Secretary of the United States Department of Health and Human Services ("HHS"), the governmental department which contains the Centers for Medicare and Medicaid Services ("CMS"), the agency within HHS that is responsible for administration of the Medicare and Medicaid programs. He may be served with process in accordance with Rule 4 of the Federal Rules of Civil Procedure by serving the U.S. Attorney for the district where the action is brought, serving the Attorney General of the United States in Washington, D.C., by certified mail, and by serving the United States Department of Health and Human Services, by certified mail.

## JURISDICTION

12.     The Court has jurisdiction pursuant to 28 U.S.C. § 1331 under the entirely collateral Constitutional claim exception to the Medicare exhaustion requirement established by *Mathews v. Eldridge*, 424 U.S. 319 (1976). Defendant's imposition of the Medicare payment suspension during the COVID-19 pandemic and national emergency without giving notice and an opportunity for a hearing to contest the adverse action violates Due Process of Law. There is a high risk that Plaintiff will be erroneously deprived of its property interest in

---

[6] Recently, in *Family Rehabilitation, Inc. v. Azar*, 886 F.3d 496 (5th Cir. 2018), the Fifth Circuit held the trial court had jurisdiction under the collateral-claim exception to the administrative exhaustion requirement over a provider's due process and *ultra vires* claims. The provider brought an action to prevent recoupment until a hearing could be provided in accordance with 42 U.S.C. § 1395ff(d) and in conformance with Due Process of Law.

Medicare payments it has earned for services rendered and withheld indefinitely by the suspension, pursuant to 42 C.F.R. § 405.371(a)(2), because the provider is not entitled to notice and opportunity for a hearing to dispute and contest the suspension, and there is absolutely no established timeframe for resolving the investigation.  Thus, Plaintiff is deprived of an administrative appeal and that effectively prevents the provider from exhausting administrative remedies to challenge the payment suspension.  No administrative or judicial review is otherwise available to contest Defendant's *ultra vires* actions.  Such failure violates Plaintiff's constitutional right of Due Process guaranteed by U.S. CONST. amend. V, § 1.  Moreover, the Medicare payment suspension and the request to temporarily rescind the action is not a benefits determination, but an otherwise unreviewable procedural issue. Jurisdiction is based upon Plaintiff's constitutional claim that is collateral to a substantive claim for benefits.  Likewise, Defendant violates Plaintiff's patients' right to access such healthcare by imposing the suspension during the COVID-19 pandemic and national emergency.

13.     Additionally, the Court has jurisdiction over the lawsuit pursuant to 42 U.S.C. §§ 405(g), 1395ii and 1395ff(b), and on the authority of *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000). Defendant's failure to extend to Plaintiff an administrative appeal to contest the Medicare payment suspension violates Due Process of Law.  Thus, Plaintiff is deprived of an administrative appeal and that effectively prevents the provider from exhausting administrative remedies to challenge the payment suspension.  No administrative or judicial review is otherwise available to contest Defendant's *ultra vires* actions.  Section 405 of the statute "would not simply channel review through the agency, but would mean no review at all." *Illinois Council*, 529 U.S. at 17. Therefore, the exhaustion requirement is excepted under *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986). This exception was

explicitly reaffirmed by *Illinois Council*, 529 U.S. at 19-23. The amount in controversy exceeds the $1,000 jurisdictional limit.

## VENUE

14.     Venue is proper in this Court under 42 U.S.C. §§ 505(g), 1395ii and 1395ff(b), and 28 U.S.C. §§ 1391(b) and (e), and 5 U.S.C. § 703.

## APPLICABLE MEDICARE LAWS

### The Medicare Program

15.     As part of the Social Security Amendments of 1965, Congress established the Medicare program: a national health insurance plan to cover the cost of medical care for the elderly and disabled. *See* 42 U.S.C. § 1395 *et seq*. Officially known as "Health Insurance Benefits for the Aged and Disabled," it provides basic protection against the costs of inpatient hospital and other institutional provider care. It also covers the costs of physician and other healthcare practitioner services and items not covered under the basic program. In 1997, beneficiaries were extended the option of choosing a managed care plan. More recently, in 2006, the program was expanded further to include a prescription drug benefit.

### Hospice Care

16.     A Medicare beneficiary becomes eligible for hospice care upon a physician's certification that he or she has a terminal illness and is expected to live six months or less if the illness proceeds at its normal course. The prognosis is based on the physician's clinical judgment regarding the normal course of the patient's illness. When electing hospice care, the patient must be informed of the palliative, rather than curative, nature of the treatment. Palliative care is defined as patient-and-family-centered care that optimizes quality of life by anticipating, preventing, and treating suffering. Palliative care addresses physical, intellectual, emotional,

social, and spiritual needs and facilitates patient autonomy, access to information, and choice. *See* 42 U.S.C. §§ 1814 (a)(7) and 1861(dd). A Medicare beneficiary may elect to receive hospice care for up to two periods of 90 days each, followed by an unlimited number of periods of up to 60 days each. A beneficiary electing to receive hospice care must choose to receive it through a particular program. 42 C.F.R. § 418.21(a). The hospice must obtain written certification of the beneficiary's terminal illness for each election period. In addition, the hospice medical director must recommend the patient for admission to the hospice in consultation with, or with input from, the patient's attending physician, if any. 42 C.F.R. §§ 418.22 and 418.25. All hospice care must be provided according to a written plan of care (POC), established by the hospice medical director in conjunction with the hospice's interdisciplinary staff, before hospice care begins. Both the beneficiary's attending physician and the hospice's medical director and interdisciplinary staff must periodically review the POC. 42 C.F.R. §§ 418.56 and 418.200.

## Payment and Audit Functions

17.     Medicare's payment and audit functions are performed by various federal contractors. For instance, the payment of home health claims at issue in this case was made by Palmetto GBA, LLC. Various other contractors, like Qlarant, a Unified Program Integrity Contractor ("UPIC"), investigate instances of suspected fraud, waste, and abuse as well as identify any improper payments that are to be collected by Administrative Contractors.

## Hospice Reimbursement

18.     With the exception of payment for physician services, Medicare payment for hospice care is made at one of four predetermined rates for each service that a beneficiary is under the care of the hospice. Because rates are prospective, there are no retroactive adjustments other than the application of the statutory "caps" on overall payment made at the end of the fiscal

10

year and on payment for inpatient care. The rate paid for any particular day varies depending on the level of care furnished to the beneficiary. The four levels of care into which each day is classified are:

> (1)    Routine Home Care – Revenue Code 0651;
>
> (2)    Continuous Home Care – Revenue Code 0652;
>
> (3)    Inpatient Respite Care – Revenue Code 0655; and
>
> (4)    General Inpatient Care (Non-respite) – Revenue Code 0656.

For each day that the beneficiary is under the care of a hospice, the hospice is reimbursed an amount applicable to the type and intensity of the services furnished to the beneficiary for that day. 42 C.F.R. § 418.302(a), (b); Medicare Claims Processing Manual, pub. 100-04, ch. 11, 301.1.

On any day on which the beneficiary is not an inpatient, the hospice is paid the routine home care rate, unless the patient receives continuous care for at least eight hours. Subject to certain limitations, on any day on which the beneficiary is an inpatient in an approved facility for inpatient care, the appropriate inpatient rate (general or respite) is paid depending on the category of care furnished. 42 C.F.R. § 418.302(e)(3) and (4)(f).

The total amount of payments made for hospice care provided by (or under arrangements made by) a hospice program for an accounting year may not exceed the "cap amount" for the year multiplied by the number of Medicare beneficiaries in the hospice program in that year. 42 U.S.C. § 1395f(i)(2); 42 C.F.R. § 418.312.

## Appeal Process

19.    Home health agencies participating in the Medicare program are entitled to appeal the initial determination. *See* 42 U.S.C. § 1395ff. Federal regulations establish an elaborate administrative appeal process to review the adverse action. *See* 42 C.F.R. Subpart I – Determination, Redeterminations, and Appeals Under Original Medicare. A provider dissatisfied

11

with an initial determination may request a Redetermination by a contractor in accordance with

42 C.F.R. §§ 405.940-405.958. The Redetermination must be issued within sixty (60) calendar

days. If a provider is dissatisfied with a Redetermination decision, it may request a Reconsideration

by a Qualified Independent Contractor ("QIC") in accordance with 42 C.F.R. §§ 405.960-405.986.

The Reconsideration must be issued within sixty (60) calendar days. In the event the provider is

dissatisfied with the Reconsideration decision, it may request an ALJ hearing in accordance with

42 C.F.R. §§ 405.1000-405.1054. The ALJ must issue a decision within ninety (90) calendar days.

The provider may request review of the ALJ's decision by the Medicare Appeals Council in

accordance with 42 C.F.R. §§ 405.1100-405.1140. The Council must issue a decision within ninety

(90) calendar days. The Council's decision is the final agency action, and it is subject to judicial

review. *See* 42 U.S.C. § 1395ff; 42 C.F.R. §§ 405.1130, 405.1132, 405.1134; *see also* 42 U.S.C.

§ 405(g).

### Suspension of Medicare Payments

20.     Medicare payments to providers may be suspended, in whole or in part, by CMS

or its contractors, if there is "reliable information that an overpayment exists." 42 C.F.R.

§ 405.371(a)(1).

21.     In cases of suspected fraud, CMS or its contractors may suspend Medicare

payments where there is a "credible allegation of fraud" against the provider, unless there is good

cause not to suspend payments. 42 C.F.R. § 405.371(a)(2).

22.     CMS may find that good cause exists not to suspend a provider's payments

where, among other things, it is determined that beneficiary access to services would be so

"jeopardized by a payment suspension" as to cause a "danger to life or health." 42 C.F.R. §

405.371(b)(ii).

23.     Every 180 days after the initiation of a suspension of payments based on a credible allegation of fraud, CMS will evaluate whether there is good cause to extend the suspension. 42 C.F.R. § 405.371(b)(2). Good cause to not continue a suspension is deemed to exist if it has been in effect for 18 months and there has not been a resolution of the investigation. 42 C.F.R. § 405.371(b)(3). However, the suspension can be continued indefinitely if the case has been referred to OIG for enforcement action or DOJ requests that it be continued based on the ongoing investigation and anticipated filing of criminal or civil action or both. 42 C.F.R. §§ 405.371(b)(3)(i), (ii).

### Rebuttal Statement

24.     A provider whose payments are suspended without notice, as in this case, is given by the Medicare contractor an opportunity to submit a rebuttal statement as to why the suspensions should be removed. 42 C.F.R. § 405.372(b)(2). *See also* 42 C.F.R. § 405.374. When a rebuttal statement is submitted, CMS, or its contractor, must within 15 days from the date of its receipt, issue written notice of the determination. The rebuttal determination is not an appealable decision. 42 C.F.R. §§ 405.375(a)-(c).[7]

### CONDITIONS PRECEDENT

25.     All conditions precedent have been performed or have occurred.

### FACTS

### Medicare Home Care Provider

26.     American Medical is a home health agency located in San Antonio, Texas, participating in the Medicare program.

---

[7] The suspension is not considered an "initial determination" and no appeal rights, including right to ALJ hearing, are extended to a provider to contest the adverse action.

13

27. Plaintiff has been in operation in the San Antonio area for approximately three years. It employs some 24 care givers and has a diverse census of approximately 43 patients. The provider derives approximately 87% of its revenue from Medicare payments, and it has an estimated value of approximately $12.2 million.

28. A patient's eligibility for hospice is determined by the medical director of hospice care in conjunction with the patient's attending physician. One or both must certify that the patient's condition is such that the patient's life expectancy is six (6) months or less if current conditions continue to demonstrate decline. Further, both Medicare and Medicaid limit the medical conditions for hospice admission to cancer-related diagnoses or one of six other noncancer diagnostic categories which further describe the patient's primary and underlying comorbidities justifying the terminal status of the patient. The hospice interdisciplinary team (IDT) composed of the medical director and/or attending physician, a registered nurse, a medical social worker, a counselor, a home health aide or homemaker, a volunteer coordinator and a bereavement counselor meet at least every 15 days to review the patient's continued terminal status and update the care plan for the applicable benefit period. A hospice patient is eligible for hospice for two (2) 90-day benefit periods followed by unlimited 60-day benefits as long as the terminal status and decline is evident and clearly documented in the medical record.

**Medicare Payment Suspension**

29. On December 2, 2019, Qlarant issued to Plaintiff a notice of suspension of Medicare payments that informed the hospice that CMS had suspended its Medicare payments effective that day. The suspension took effect on the date of the notice's issuance because CMS had asserted that prior notice would have placed additional Medicare funds at risk. The suspension action was brought under 42 C.F.R. § 405.371(a)(2) and alleges a "credible allegation

14

of fraud." As a result of the suspension action, all Medicare payments owed to the provider are being withheld pending resolution of the ongoing investigation.

30.     Specifically, CMS based its decision to suspend upon the belief that the provider had "misrepresented services billed to the Medicare program." According to the notice, CMS has concluded that "a review of claims submitted by American Medical Hospice Care, LLC showed the claims failed to meet Medicare requirements." It based this conclusion upon having determined the services provided "were not supported by the hospice records." Moreover, CMS listed five sample claims for which it had determined with respect to each claim that "Hospice services did not meet Medicare requirement or services not supported in hospice record."

**CMS Abused its Discretion in Not Exercising Good Cause Exception to Suspension**

31.     Had Defendant acted properly, it would not have continued the suspension. CMS may find good cause exists not to suspend a provider's Medicare payments, pursuant to 42 C.F.R. § 405.371(b)(1)(ii), when a beneficiary's access to items or services would be so jeopardized by a payment suspension as to cause a danger to life or health. It is a clear abuse of discretion for CMS to not find that good cause exists here when the COVID-19 pandemic and the surge of confirmed coronavirus cases will soon overwhelm America's healthcare system, including hospice providers. Not only will Plaintiff be forced to shut down, the government's suspension action places an even greater burden on a healthcare community that soon may be on the brink of collapse.

**COVID-19 Pandemic and National Emergency**

32.     President Donald Trump declared on March 13, 2020 a national emergency because of the COVID-19 pandemic.

15

33.     Governor Gregg Abbott also declared a state of disaster in Texas due to COVID-19 on March 13, 2020.

34.     When the national emergency was declared, the U.S. Government COVID-19 Response Plan was issued outlining the coordinated federal response activities for COVID-19. The Government's response plan makes two things clear: (1) the pandemic "will last 18 months or longer" and (2) the COVID-19 outbreak will result in the implementation of drastic measures to contain its spread throughout the nation. Society as a whole may soon be faced with strict containment and social distancing measures for an extended period of time.

35.     Dr. Deborah Birx, White House Coronavirus Response Coordinator, has reported that U.S. deaths cause by COVID-19 may be catastrophic.  She said that Dr. Anthony Fauci, National Institute of Allergies and Infectious Diseases, has predicted U.S. deaths could range from 1.6 to 2.2 million in a worst-case scenario and projects 100,000 to 200,000 in a best-case scenario.  With the surge of confirmed coronavirus cases, America's hospitals are being overwhelmed.  And it is having a cascading effect on ancillary providers and practitioners, including home health agencies.

**Coronavirus Spreading at an "Unacceptable Rate"**

36.     "COVID-19 is now spreading at an unacceptable rate in the state of Texas, and it must be corralled," said Governor Abbott.  Office of the Texas Governor, Press release: *Governor Abbott Provides Update On COVID-19 Response, Urges Texans To Follow Guidelines*, June 22, 2020.

37.     According to the Centers for Disease Control and Prevention as of June 23, 2020 there have been 2,302,288 confirmed cases and 120,333 COVID-19-related deaths in the United States.

16

**Violation of Plaintiff's Due Process Rights**

38.     Plaintiff has a constitutional property interest in payments for services rendered

and now indefinitely suspended during the investigation into the adequacy of its documentation.

Defendant violates Due Process of Law by imposing the adverse action during the COVID-19

pandemic and national emergency without extending to the provider notice and an opportunity

for   a hearing to contest the Medicare payment suspension.  Clearly, there is a high risk that

Plaintiff will be erroneously deprived of its property interest in Medicare payments it has earned

for services rendered and indefinitely withheld by suspension, pursuant to 42 C.F.R. §

405.371(a)(2), because the provider is not entitled under the available process to an

administrative appeal to dispute and contest the suspension, and there is absolutely no

established timeframe for resolving the investigation of its documentation.

**Violation of Plaintiff's Patients' Due Process Rights**

39.     Patients at American Medical have a constitutional Due Process right (consistent

with principles of equal protection) to access safe and reliable services under the federal

Medicare program.  HHS violates the patients' right to access such healthcare by imposing the

suspension during the COVID-19 pandemic and national emergency.  Again, due to the COVID-

19 outbreak securing such services is an uncertainty.  Clearly, good cause exists not to suspend

the provider's Medicare payments where, as here, the beneficiary's access to items or services

are jeopardized by the payment suspension and cause a danger to life or health.  See 42 C.F.R. §

405.371(b)(1)(ii).  Plaintiff is not entitled to an administrative appeal to contest the suspension or

HHS's abuse of discretion in not finding good cause to not impose the adverse action.

## Continuation of Suspension

40. On May 20, 2020, Qlarant issued notice of continued suspension informing the provider that CMS was continuing the suspension for an additional 180 days beginning from May 29, 2020. The notice stated that the contractor would continue suspending payments until the investigation of the hospice was completed in accordance with 42 C.F.R. § 405.372(c)(2). The notice further stated that when the suspension was terminated, any money withheld as a result of the action would be applied first to reduce or eliminate any determined overpayments, including any interest assessed, and then to reduce any other obligation to CMS or the U.S. Department of Health and Human Services.

## Suspension Will Force Plaintiff to Shut Down and File Bankruptcy

41. Impact of the Medicare payment suspension threatens to force Plaintiff's closure and filing of bankruptcy.

## Rebuttal Statement

42. A Rebuttal Statement was presented by Plaintiff to Qlarant on June 22, 2020 informing the UPIC that the Medicare suspension during the COVID-19 epidemic and national emergency was improper because, among other things, (1) it violates Plaintiff's constitutional right in payments for services rendered by failing to give notice and an opportunity for a hearing while payments are indefinitely suspended during the pendency of an investigation into the adequacy of its documentation, and (2) it violates the provider's patients' constitutional right to access essential healthcare services.

18

## Presentment of Claim

43.     On June 22, 2020, Plaintiff gave formal Presentment of its Claim to Defendant informing HHS that imposing the Medicare suspension during the COVID-19 epidemic and national emergency was improper because, among other things, (1) it violates Plaintiff's constitutional right in payments for services rendered by failing to give notice and an opportunity for a hearing while payments are indefinitely suspended during the pendency of an investigation into the adequacy of its documentation, and (2) it violates the provider's patients' constitutional right to access essential healthcare services.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

44.     Defendant's failure to give notice and an opportunity for hearing to dispute and contest the March 12, 2020 suspension of Medicare payments violates constitutionally required procedures.  Plaintiff is deprived of an administrative process that conforms to the concept of Due Process of Law and that effectively prevents the provider from exhausting administrative remedies to challenge the illegal action.  No administrative or judicial review is otherwise available to contest Defendant's adverse action.  Such failure violates Plaintiff's constitutional right of Due Process of Law guaranteed by the U.S. CONST. amend. V, § 1. Under these facts, the administrative exhaustion requirement is excused.

## CLAIMS FOR RELIEF

### Count 1 - Violation of Procedural Due Process of Law

45.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

46.     The Fifth Amendment to the U.S. Constitution guarantees that no person shall be deprived of life, liberty, or property without Due Process of Law.

19

47.     Plaintiff has a constitutional property right in earned payments for services rendered and now indefinitely suspended during the pendency of the investigation into the adequacy of its documentation.

48.     Defendant's failure to give meaningful notice and an opportunity for a hearing to dispute and contest the suspension of Plaintiff's Medicare payments violates Due Process of Law.

49.     Despite the lack of appeal rights to challenge the adverse action, Defendant initiated 100% suspension of the provider's Medicare payments for an indefinite period of time, which will irreparably harm the provider by forcing its closure and filing of bankruptcy.

50.     Indeed, Defendant's failings have denied Plaintiff the fundamental requisites of Due Process, notice and an opportunity to be heard.

51.     Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to temporarily rescind the Medicare payment suspension during the pendency of the COVID-19 pandemic and national emergency or until it can provide notice and a hearing in conformance with constitutionally required procedures.

**Count 2 - Violation of Patients' Due Process Right of Access to Healthcare**

52.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

53.     Patients at American Medical have a Due Process right (consistent with principles of equal protection) to access safe and reliable services under the federal Medicare program.

54.     Defendant violates these patients' right to access such healthcare by imposing the suspension during the COVID-19 pandemic and national emergency.

55.     Due to the COVID-19 outbreak securing such hospice care is an uncertainty.

20

56.     Defendant jeopardizes the health and safety of Plaintiff's patient by suspending the provider's Medicare payments when the availability of alternative services is unsure and access to home health services is at risk during the COVID-19 pandemic and national emergency.

57.     Defendant's ill-advised suspension of Plaintiff's Medicare payments deprives the provider's patients of their constitutional right to access essential healthcare services.

58.     A patient cannot secure hospice care without the aid of a hospice provider, and a Medicare beneficiary cannot secure necessary end-of-life care without the hospice being paid by the Medicare program. Clearly, a patient's right to access safe and reliable hospice care under the federal Medicare program is at stake here. Moreover, the patient's constitutional right to access is one in which the provider is intimately involved. *See Singleton v. Wulff*, 428 U.S. 106 (1976). Therefore, Plaintiff is uniquely qualified to litigate the constitutionality of the government's interference with, or discrimination against, such access, and the provider appropriately asserts the rights of beneficiaries against governmental interference with access to hospice care.

59.     Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to temporarily rescind the Medicare payment suspension during the pendency of the COVID-19 pandemic and national emergency or until it can provide notice and a hearing in conformance with constitutionally required procedures.

**Count 3 – Defendant's Suspension of Payments is Arbitrary and Capricious**

60.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

61.     The Federal regulations 42 C.F.R. § 405.371(b)(1)(ii) provide that Defendant may find good cause exists *not* to suspend a provider's Medicare payments over credible allegations of fraud where it is determined that beneficiary access to items or services would be so jeopardized by a payment suspension in whole or in part as to cause a danger to life or health.

21

62.     Due to the COVID-19 outbreak securing such hospice care is an uncertainty.

63.     Defendant jeopardizes the health and safety of Plaintiff's patients by suspending the provider's Medicare payments when the availability of alternative services is unsure and access to home health services is at risk during the COVID-19 pandemic and national emergency.

64.     It is a clear abuse of discretion for Defendant to not find that good cause exists here where the COVID-19 pandemic and the surge of confirmed coronavirus cases will soon overwhelm America's healthcare system, including hospice providers like American Medical.

65.     Defendant's ill-advised action not only will force Plaintiff to shut down its operation, it will place an even greater burden on a healthcare community that may soon be on the brink of collapse in the COVID-19 epidemic and national emergency.

66.     Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to temporarily rescind the Medicare payment suspension during the pendency of the COVID-19 pandemic and national emergency or until it can provide notice and a hearing in conformance with constitutionally required procedures.

## Count 4 – Ultra Vires

67.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

68.     Defendant acts *ultra vires* in failing to give notice and an opportunity for a hearing to dispute and contest the adverse action in conformance with Due Process of Law yet imposing Medicare payment suspension during the COVID-19 pandemic and national emergency.

22

69.     Despite the failure to give notice and an opportunity for hearing to dispute and contest the adverse action, Defendant has suspended 100% of Plaintiff's payments, which will irreparably harm the provider by forcing it to close and file bankruptcy.

70.     Indeed, Defendant's failings effectively deprive Plaintiff of the fundamental requisites of Due Process, notice and an opportunity to be heard.

71.     Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to temporarily rescind the Medicare payment suspension during the pendency of the COVID-19 pandemic and national emergency or until it can provide notice and a hearing in conformance with constitutionally required procedures.

## REQUEST FOR PRELIMINARY INJUNCTION

72.     Plaintiff will suffer irreparable injury if Defendant is not required to temporarily rescind the Medicare payment suspension during the pendency of the COVID-19 pandemic and national emergency or until it can provide a hearing and decision in conformance with constitutionally required procedures. Defendant's failure to give meaningful notice and an opportunity for a hearing to dispute and contest the suspension of Plaintiff's Medicare payments violates Due Process of Law. Also, Plaintiff's patients have a Due Process right (consistent with principles of equal protection) to access safe and reliable services under the federal Medicare program, and Defendant violates these patients' right to access essential healthcare by imposing the suspension during the COVID-19 pandemic and national emergency. The government's egregious *ultra vires* conduct can only be remedied by a form of injunctive relief otherwise unavailable through the administrative process. Clearly, the combined threats of Plaintiff going out of business and its patients' loss of access to essential healthcare services are sufficient for irreparable harm. *Family Rehabilitation, Inc. v. Azar*, 886 F.3d at 506.

23

73.     There is no adequate remedy at law to contest and dispute the Medicare payments suspension imposed during the COVID-19 pandemic and national emergency. *See Family Rehabilitation, Inc. v. Azar*, 886 F.3d at 504 (jurisdiction to hear procedural due process and *ultra vires* claims). Indeed, when the administrative process is not accessible, extraordinary relief is available. *See U.S. Ex Rel. Rahman v. Oncology Associates*, P.C., 198 F.3d 502 (4th Cir. 1999) (mandamus available when HHS failed to make overpayment determinations).

74.     There is a substantial likelihood that Plaintiff will prevail on the merits because Defendant's failure to give notice and an opportunity for hearing to contest the suspension imposed during the COVID-19 pandemic and national emergency violates Due Process of Law. Plaintiff seeks only to temporarily rescind the Medicare payment suspension until the COVID-19 national emergency ends or until Defendant can provide a hearing and decision in conformance with constitutionally-required procedures. Procedural due process protects against governmental deprivation of a property interest, such as Plaintiff's interest in receiving Medicare payments earned for services rendered. *See Adams*, No. 4:18-cv-01422 (S.D. Tex. July 11, 2018); *Family Rehabilitation, Inc. v. Azar*, 2018 WL 2670730, *5-6 (N.D. Tex. June 4, 2018). *See also Furlong v. Shalala*, 156 F.3d 384 (2d Cir. 1998) and *Oberlander v. Perales*, 740 F.2d 116 (2d Cir. 1984) (property interest in "earned" Medicaid payments). This is derivative of the protected property interest recognized in one's ownership of money. *See Board of Regents v. Roth*, 408 U.S. 564, 571-72 (1971). Accordingly, Plaintiff has a property interest in receiving the Medicare payments it has earned for services rendered and that interest is violated by Defendant's imposition of the Medicare payment suspension during the COVID-19 pandemic and national emergency, and where it fails to give notice and an opportunity for hearing to dispute and contest the adverse action.  Inasmuch as Defendant has failed to give notice and an opportunity for hearing to contest the

24

Medicare payments suspension, and Defendant violates Plaintiff's patients' right to access essential healthcare by imposing the suspension during the COVID-19 pandemic, Plaintiff demonstrates a substantial likelihood of success on the merits of its procedural due process claim.

75.     The harm faced by Plaintiff outweighs the harm that would be sustained by Defendant if injunctive relief is not granted. The provider will be forced to close its doors and file bankruptcy because of Defendant's *ultra vires* acts and its patients will be forced to secure alternative services in the midst of the COVID-19 pandemic and national emergency when such essential healthcare services are at risk of being unavailable. Defendant, on the other hand, will only be required to pay for the current claims of Medicare beneficiaries that it is otherwise obligated to reimburse under law.

76.     Issuance of a preliminary injunction would not adversely affect the public interest. On the contrary, such relief ensures that Defendant will continue to provide essential healthcare to Medicare program beneficiaries during the COVID-19 pandemic and national emergency.

77.     Plaintiff is willing to post a bond in the amount the Court deems appropriate, but it should not be required to do so on the facts on this case because Defendant is otherwise obligated to pay for hospice care for beneficiaries under the Medicare program.

78.     Plaintiff asks the Court to set its application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction.

## REQUEST FOR PERMANENT INJUNCTION

79.     Plaintiff asks the Court to set its application for injunctive relief for a full trial on the issues in this application and, after the trial, to issue a permanent injunction against Defendant.

25

**REQUEST FOR DECLARATORY RELIEF**

80.     Plaintiff asks the Court for declaratory relief in accordance with Rule 57 and 28

U.S.C. § 2201 that declares Defendant's May 20, 2020 continuation of Medicare payment

suspension during the COVID-19 pandemic and national emergency (1) violates Plaintiff's

constitutional right in payments for services rendered and now indefinitely suspended during the

pendency of an investigation into the adequacy of its documentation, (2) violates the provider's

patients' constitutional right to access essential healthcare services, and (3) is arbitrary and

capricious and a clear abuse of discretion for Defendant to not find good cause exists not to

suspend the provider's Medicare payments when the beneficiary's access to items or services is

jeopardized by the payment suspension and it causes a danger to life or health.

**ATTORNEY FEES & COSTS**

81.     Plaintiff is entitled to an award of attorney fees and costs under the Equal Access

to Justice Act, 28 U.S.C. § 2412, upon showing the applicant is a "prevailing party;" showing

that the applicant is eligible to receive an award; and a statement of "the amount sought,

including an itemized statement from any attorney . . . stating the actual time expended and the

rate charged." The prevailing party is entitled to such attorney fees unless the government's

position was "substantially justified" or special circumstances make an award unjust.

**PRAYER**

82.     For these reasons, Plaintiff asks for judgment against Defendant for the following:

     a.     Mandatory injunctive relief that requires Defendant to temporarily rescind

          the Medicare payment suspension during the pendency of the COVID-19

          pandemic and national emergency or until HHS can provide a hearing and

          decision in conformance with constitutionally required procedures.

b.   Declare that Defendant's May 20, 2020 continuation of Medicare payment suspension violates Plaintiff's constitutional right to notice and an opportunity for hearing to contest the adverse action.

c.   Declare that Defendant's May 20, 2020 continuation of Medicare payment suspension violates Plaintiff's patients' constitutional right to access essential healthcare services.

d.   Declare that Defendant's May 20, 2020 continuation of Medicare payment suspension is arbitrary and capricious and a clear abuse of discretion for Defendant to not find good cause exists not to suspend the provider's Medicare payments when the beneficiary's access to items or services is jeopardized by the payment suspension and it causes a danger to life or health.

e.   Reasonable attorney fees.

f.   Court costs.

g.   All other relief the Court deems appropriate.

Respectfully submitted,

KENNEDY
Attorneys and Counselors at Law

/s/ Mark Kennedy
MARK S. KENNEDY
State Bar of Texas No. 24000122
LURESE TERRELL
State Bar of Texas No. 24008139
C. TREY SCOTT
State Bar of Texas No. 24083821
12222 Merit Drive, Suite 17500
Dallas, TX 75251
Telephone: (214) 445-0740
Fax: (972) 661-9320

27

markskennedylaw@msn.com

**ATTORNEYS FOR PLAINTIFF**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **AMERICAN MEDICAL HOSPICE CARE, LLC, d/b/a AMERICAN MEDICAL HOSPICE & PALLIATIVE CARE,** | § § § § § | |
| **Plaintiff,** | § § | |
| **vs.** | § § | **CIVIL ACTION NO.  5:20-cv-00757** |
| **ALEX M. AZAR II, Secretary, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.** | § § § § § § | |

## VERIFICATION

"I, Robert Dojonovic, declare from my personal knowledge that the following facts are true:

1.     I, Robert Dojonovic, am the President of American Medical Hospice Care, LLC.

2.     I have read the Verified Complaint for Injunctive and Declaratory Relief and Attorney Fees.

3.     The facts stated in that complaint are within my personal knowledge and are true and correct.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on June 26, 2020."

_____
ROBERT DOJONOVIC